# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS EDWARDS AND MICHAEL FORTUNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiffs,<br><br>v.<br><br>SEQUOIA FUND, INC., A MARYLAND CORPORATION,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Thomas Edwards and Michael Fortune ("Plaintiffs"), on behalf of themselves individually and all other similarly situated investors in Sequoia Fund, Inc. ("Sequoia" or the "Fund"), by and through their attorneys, allege the following upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters based upon their investigation, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings, news reports, and other publicly available materials.

## I. NATURE OF THE ACTION

1. This is a class action brought by two of Sequoia's shareholders on their own behalf and all other similarly situated investors in Sequoia for breach of Sequoia's fundamental investment policy which is set forth in its Prospectus, Statement of Additional Information ("SAI") and Registration Statement.

2. Specifically, Sequoia contractually agreed to manage each shareholder's investment in a manner that was consistent with a fundamental investment policy which prohibited the Fund from investing more than 25% of the value of its net assets in any particular industry (the "Concentration Policy").

3. The underlying purpose of Sequoia's Concentration Policy was to limit the Fund's risk of loss, by not investing more than 25% of the value of its net assets in any industry, at any point in time. As the SEC has explained, "a fund that concentrates its investments [in a single industry] will be subject to greater risks than funds that do not follow [such a] policy."

4. Contrary to its contractual agreement to follow its Concentration Policy, the value of the Fund's holdings of healthcare industry stocks[1] constituted over 25% of its net assets as reported in SEC filings for the quarters ending March 31, 2015,[2] June 30, 2015,[3] and September 30, 2015.[4] This violation arose primarily because the value of the Fund's holdings of a single company, Valeant Pharmaceuticals International, Inc., ("Valeant") alone exceeded 25% of its net assets at the close of the quarters ended March 31, 2015 and June 30, 2015, and fell only a fraction of a percent short of 25% by September 30, 2015.

5. The Fund held stock in the following percentages that violated the Concentration Policy: (1) on March 31, 2015, the Fund held 27.3% of its net assets in "healthcare" industry stocks, and 27% in companies operating within SIC codes 2834 and/or 283, with Valeant alone comprising 26% of the Fund's net assets; (2) on June 30, 2015, the Fund held 30% of its net assets in healthcare industry stocks, and 29.7% in companies operating in SEC codes 2834 and/or 283 with Valeant alone comprising 28.7% of the Fund's net assets; and (3) on September

---

[1] Whether an industry category is defined as "healthcare" or SIC 283 ("Manufacturing-Drugs") or SIC 2834 ("Pharmaceutical-Preparations"), Sequoia was in violation of its Concentration Policy. The three companies that are considered to be in each of these three potential definitions of an "industry" are Valeant, Perrigo, and Zeotis during each of the periods referred to herein.

[2] Form N-Q, Quarterly Schedule of Portfolio Holdings, for reporting period: March 31, 2015, pp. 2-3.

[3] Form N-CSR, Certified Shareholder Report, for reporting period: June 30, 2015, p. 6.

[4] Form N-Q, Quarterly Schedule of Portfolio Holdings, for reporting period: September 30, 2015, pp. 2-3.

30, 2015, the Fund held 26% of its net assets in healthcare industry stocks, and 25.7% in companies operating within SIC codes 2834 and/or 283 with Valeant alone comprising 24.8% of the Fund's net assets. The Fund's investment in Valeant was its single largest investment.

6. Defendant's violation of its Concentration Policy caused the Fund to lose over $600 million dollars when Valeant's stock price sustained a substantial decline in value.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over the parties pursuant to 28 U.S.C. §1332.

8. Venue is proper in this Court because Sequoia has its principal place of business in New York City and Defendant's wrongful conduct originated in New York City where Defendant conducted business.

## PARTIES

### A. Plaintiffs

9. Plaintiff Thomas Edwards is a citizen of the State of Washington. He purchased shares of Sequoia in 2014 which he held until May of 2017.

10. Plaintiff Michael Fortune is a citizen of the State of South Carolina and originally purchased shares of Sequoia in 1989. He has held shares since that time (including throughout 2015), making purchases and sales on various occasions.

11. Plaintiffs were shareholders of Sequoia at the time of the actions complained of herein.

### B. Defendant

12. Sequoia is an open-end investment company that is organized under the laws of the State of Maryland. Sequoia is a registered investment company under the Investment Company Act of 1940 (the "Investment Company Act" or "1940 Act").

13. At all relevant times, Sequoia has maintained its principal place of business at 9 West 57th Street, Suite 5000, New York, New York 10019. and it is the sponsor of Sequoia's mutual fund.

14. Sequoia issues redeemable securities in the Fund. Sales of the shares of the Fund can only be made by Sequoia to investors pursuant to a Registration Statement and Prospectus filed with the SEC.

15. Sequoia reports to shareholders its portfolio holdings as of the month-end in June and December. Sequoia also reports its portfolio holdings as of month-end March and September in Form N-Q filings with the SEC.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Sequoia Fund

16. Sequoia is engaged in the business of investing and reinvesting capital in securities of the type and in accordance with the limitations specified in its governing documents, including the Articles of Incorporation, By-Laws, Registration Statement, SAI, and Prospectus, all in such manner and to such extent as may from time to time be authorized by its Board of Directors.[5]

17. With respect to Fund assets, Sequoia is empowered and required to purchase and dispose of such assets, for the benefit of the shareholders, and to exercise all rights, powers and privileges with reference to such business or incident of ownership, use and enjoyment of such funds or of securities.

---

[5] *See* Investment Advisory Contract dated March 1, 2006.

B.   **Sequoia's Investment Strategies and Policies**

18.   The Investment Company Act, which establishes a comprehensive federal regulatory framework applicable to mutual funds, provides that a mutual fund's Registration Statement must recite all investment policies that can be changed only by shareholder vote. 15 U.S.C. § 80a–8(b). These investment policies, which are changeable only by a shareholder vote, were adopted and incorporated in Sequoia's Registration Statement and Prospectus.

19.   A Prospectus is the primary selling document for a mutual fund and represents an offer to sell shares to investors in that fund, which will invest the proceeds in the manner described in the Prospectus, unless shareholders approve a proposal to do otherwise. As Sequoia explained to its investors: "The Fund may be offered only to persons in the United States by way of a prospectus."[6] Sequoia further states: "Please consider the investment objectives, risks and charges and expenses of the Fund carefully before investing. The Fund's Prospectus contains this and other information about the Fund."[7]

20.   Sequoia's Prospectus is issued on an annual basis. The SAI, which contains Sequoia's Concentration Policy, is "incorporated by reference in the Prospectus"[8] and is intended to be read in conjunction with the Prospectus.

21.   Sequoia's Concentration Policy, is considered a fundamental investment policy, pursuant to Sections 8(b) and 13 of the 1940 Act. This policy can be changed only by a vote of the shareholders.[9] Pursuant to Sequoia's own Registration Statement and Sections 8(b) & 13(a) of the Investment Company Act, Sequoia's compliance with its stated Concentration Policy is

---

[6] http://www.sequoiafund.com. *See, also, e.g.,* Sequoia Fund, Inc. Semi-Annual Report (unaudited) June 30, 2017 at 27.
[7] http://www.sequoiafund.com.
[8] SAI dated May 1, 2015 (Prefatory Statement).
[9] *See* SAI dated May 1, 2015, p. 3 ("The Fund has adopted certain investment restrictions as a matter of fundamental investment policy, which may not be changed without a stockholder vote of a majority of the outstanding voting securities.").

mandatory. Section 13(a) of the Investment Company Act requires that a registered investment company (such as Sequoia) may not "deviate from its policy in respect of concentration of investments in any particular industry or group of industries...."

22. Sequoia's Concentration Policy states that:

> The Fund may not: ... 14. Concentrate investments in an industry, as concentration may be defined under the 1940 Act or the rules and regulations thereunder (as such statute, rules or regulations may be amended from time to time) or by guidance regarding, interpretations of, or exemptive orders under, the 1940 Act or the rules or regulations thereunder published by appropriate regulatory authorities.[10]

23. Form N-1A, which is the registration statement form for open-end mutual funds, reflects the SEC's long-standing view that "25% is an appropriate benchmark to gauge the level of investment concentration that could expose investors to additional risk," and thus, "a fund investing more than 25% of its assets in an industry is concentrating in that industry."[11] Accordingly, the Fund's Concentration Policy prohibits investment of more than 25% of the value of the total assets of the Fund in any single industry at any given time.

24. In 1983 the SEC promulgated guidance concerning when the Concentration Policy was enforceable. The SEC limited the Concentration valuation to the time of purchase of a security. In 1998 the SEC rescinded the 1983 guidance.

C. **The Fund Acquired a Highly Concentrated Position in Healthcare Industry Stocks.**

25. Sequoia, in its Semi-Annual Report dated June 30, 2010, first disclosed that the Fund had added Valeant, a healthcare industry company, to its holdings.

---

[10] *See, e.g.,* SAI dated May 2, 2011, p. 6, ¶(f)(14); SAI dated May 1, 2015, as amended October 29, 2015, p. 3-4, ¶(f)(14); SAI dated May 1, 2017, p. 3-4, ¶(f)(14).

[11] *1998 Release*, 63 Fed. Reg. at 13,927.

26. Sometime during the first quarter of 2015, the Fund was in violation of its fundamental Concentration Policy. Specifically, the Fund held stock in the following percentages that violated the fundamental Concentration Policy: (1) on March 31, 2015, the Fund held 27.3% of its net assets in "healthcare" industry stocks, and 27% in companies within SIC codes 2834 and/or 283, with Valeant alone comprising 26% of the Fund's net assets; (2) on June 30, 2015, the Fund held 30% of its net assets in healthcare industry stocks, and 29.7% in companies within SIC codes 2834 and/or 283 with Valeant alone comprising 28.7% of the Fund's net assets; and (3) on September 30, 2015, the Fund held 26% of its net assets in healthcare industry stocks, and 25.7% in companies within SIC codes 2834 and/or 283 with Valeant alone comprising 24.8% of the Fund's net assets.

27. Despite this repeated and ongoing violation of its fundamental investment policy, Sequoia never took any action to reduce its holdings of any healthcare industry stock to return to compliance with the Concentration Policy.

28. Sequoia's investment advisor, Ruane, Cunniff & Goldfarb, Inc., and its independent directors have taken the position that Sequoia's Concentration Policy did not ever require Sequoia to reduce its holding of any healthcare industry stock because the Concentration Policy only prevented Sequoia from "purchas[ing] securities in an issuer [within an industry] if *that purchase* will cause Sequoia to have more than 25% of its net assets in [an industry]"[12] and that Sequoia was not required to "sell investments in an industry if concentration in that industry exceeds 25% as a result of changes in the value of securities."[13]

---

[12] Memorandum of Law in Support of Defendants Ruane, Cunniff & Goldfarb Inc., Robert Goldfarb, and David Poppe's Motion to Dismiss the Verified First Amended Complaint at 21, Doc No. 56 in *Epstein et al. v. Ruane, Cunniff & Goldfarb Inc., et al.*, No. 650100/2016 (N.Y. Sup. Ct.) (emphasis in original).
[13] *Id.* at 22.

29. As a result of Sequoia's breach of its Concentration Policy, the Fund declined substantially in value. The risk of overinvestment in a single industry became manifest when Valeant's stock price dropped significantly in late 2015 and 2016, resulting in massive losses to the Fund and its shareholder investors.

**D.    The Fund's Violation of the Concentration Policy Was Unknown and Unknowable by Investors Until May 26, 2015.**

30. Neither Plaintiffs nor any other member of the Class knew or could have known of Sequoia's violation of its Concentration Policy prior to May 26, 2015.

31. Sequoia notes that "it is the policy of the Fund and its affiliated persons not to disclose to third parties nonpublic information of a material nature about the Fund's specific portfolio holdings. ... The Fund publicly files a portfolio report on a quarterly basis, either by way of a shareholder report or a filing of Form N-Q, within 60 days of end of each fiscal quarter."[14]

32. It was only on May 26, 2015 that Sequoia filed its Form N-Q with the SEC for the reporting period ending March 31, 2015 which, for the first time disclosed to Sequoia investors, including Plaintiffs, that Sequoia had been and was violating its Concentration Policy by holding 27.3% of its assets in the healthcare industry or 27% in companies within SIC codes 2834 or 283 as of at least March 31, 2015 and had likely been in violation for some time prior to that date.

**E.    Class Action Allegations**

33. Plaintiffs bring this national class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class consisting of all persons or entities who held shares in the Sequoia Fund when more than 25% of the Fund assets were invested in healthcare

---

[14] Prospectus April 29, 2016, p.13.

{00934778.DOCX;1 }

8

industry stocks (hereafter "Class Period"[15]) and did not sell any part of their Sequoia shares between the start of the Class Period and October 20, 2015.

34. Excluded from the Class are Defendant, any subsidiaries or affiliates of Defendant in which Defendant or its affiliates have a controlling ownership interest; officers and directors of Defendant; and heirs, successors and assigns of Defendant; or its officers and directors. Also excluded from the Class are Plaintiffs' counsel and their direct family members.

35. Plaintiffs' breach of contract claim is not based on a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security, nor is it based on a claim that Sequoia used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security. Rather, Plaintiffs' cause of action is solely limited to whether Sequoia interpreted and applied its Concentration Policy in the manner that is required by law.

36. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, upon information and belief there are in excess of 1,000 shareholders located throughout the United States. Record owners and other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail.

37. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendant's wrongful conduct in violation of state law that is complained of herein.

---

[15] Based on publicly available data Plaintiffs believe the Class Period extends from the beginning of February of 2015 to the end of September of 2015, but the precise dates will be determined through discovery.

38. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action litigation.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    A. Whether the Fund deviated from a fundamental investment objective or policy that could only be changed by a shareholder vote;

    B. Whether the Fund concentrated investments in the Fund in excess of 25% of its total net assets in any one industry;

    C. Whether the Fund's Concentration Policy applied only at the time investments were made or to Fund holdings at all times;

    D. Whether the Fund breached contractual duties with Class members; and

    E. Whether the members of the Class have sustained damages, and, if so, what is the proper measure thereof.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. There will be no difficulty in managing this action as a class action

## CLAIM

### Breach of Contract

41. Plaintiffs repeat and reallege the allegations contained in each of the foregoing paragraphs as if fully set forth herein.

42. The Fund may be offered only to persons in the United States and by way of a Prospectus.

43. The Prospectus states that "[t]he Fund's SAI is incorporated by reference into (and is legally part of) this Prospectus."

44. The SAI provides potential investors with "additional and more detailed information than that set forth in the Prospectus and should be read in conjunction with the Prospectus."

45. The Prospectus and SAI represent an offer by Sequoia to sell shares in the Fund and a contractual commitment by Sequoia to manage the investments of all shareholders in the Fund pursuant to all listed fundamental investment SAI policies, including the Concentration Policy.

46. Plaintiffs and other members of the Class accepted that offer when they purchased and continued to hold their shares in Sequoia during the Relevant Class Period.

47. The Prospectus and SAI list "certain investment restrictions as a matter of fundamental investment policy, which may not be changed without a stockholder vote of a majority of the outstanding voting securities as defined in Section 2(a) (42) of the 1940 Act."

48. Among those fundamental investment policies is a promise to investors that, the Fund will not:

> 14. Concentrate investments in an industry, as concentration may be defined under the 1940 Act or the rules and regulations thereunder (as such statute, rules or regulations may be amended from time to time) or by guidance regarding, interpretations of, or exemptive orders under, the 1940 Act or the rules or regulations thereunder published by appropriate regulatory authorities.

49. The Prospectus and SAI require that Sequoia comply with the Concentration Policy at all times.

50. During the Class Period, Sequoia violated the Concentration Policy by allowing its investment in healthcare industry stocks, or stocks in companies operating within SIC codes

2834 and/or 283 to exceed 25% of the value of its net assets and failing to take any action to bring the Fund within its policy limitations.

51.  As a result of Sequoia's material breach of the Concentration Policy, Plaintiffs and all members of the Class suffered losses when the value of their shares declined following the dramatic decline in the value of those healthcare industry stocks or stocks in companies operating within the SIC codes 2834 and/or 284 that were being held by Sequoia in its stock portfolio.

**WHEREFORE**, Plaintiffs pray for relief and judgment as follows:

A.  Certifying a Class, appointing Plaintiffs to represent that Class, and appointing Plaintiffs' counsel as counsel for that Class;

B.  Awarding such damages as Plaintiffs individually and the Class incurred as a result of Defendant's contract breach; and

C.  Such other equitable, injunctive or other relief as deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: New York, New York
May 21, 2018

ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.


By /s/ Alan M. Pollack
   Alan M. Pollack
   amp@robinsonbrog.com
   Felicia S. Ennis
   fse@robinsonbrog.com
   875 THIRD AVENUE, 9TH FLOOR
   NEW YORK, NY 10022-0123
   TELEPHONE: (212) 603-6300
   FACSIMILE: (212) 956-2164


   KELLER ROHRBACK L.L.P.
Mark A. Griffin (pro hac vice pending)
mgriffin@kellerrohrback.com
Raymond J. Farrow (pro hac vice pending)
rfarrow@kellerrohrback.com
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WA 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

STANLEY H. EPSTEIN (pro hac vice pending)
stanatty@yahoo.com
515 OCEAN AVENUE #N507
SANTA MONICA, CA 90402-2624
TELEPHONE: (310) 393-7619
FACSIMILE: (310) 393-7684


***Attorneys for Plaintiffs***